<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

PAUL EDWARD COOMER,            :
                              :    Civil Action No. 09-3304 (JAP)
            Plaintiff,         :
                              :
            v.                 :    **OPINION**
                              :
GOVERNOR JON S. CORZINE,       ;
et al.,                        :
                              :
            Defendants.        :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Paul Edward Coomer
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**PISANO**, District Judge

        Plaintiff Paul Edward Coomer, a prisoner confined at New

Jersey State Prison in Trenton, New Jersey, seeks to bring this

action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.  Based on his affidavit

of indigence and the absence of three qualifying dismissals

within 28 U.S.C. §1915(g), the Court will grant Plaintiff's

application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C.

§ 1915(a) and order the Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is an Interstate Compact prisoner, currently serving a life sentence and confined in New Jersey State Prison.

Plaintiff alleges that he is neurologically, physically, and visually handicapped. More specifically, he alleges that he suffers from: impaired vision in one eye and is totally blind in the other, neurological damage from a prior injury, intense subdural pain, memory loss, cognitive impairments, Chronic Obstructive Pulmonary Disease, asthma, rheumatoid arthritis, nerve damage in his extremities, and limited mobility through the use of prosthetic devices.

Plaintiff alleges a host of violations against a variety of defendants. The defendants consist of: Governor Jon S. Corzine, New Jersey Department of Corrections Commissioner George Hayman, Administrator Michelle R. Ricci, Interstate Compact Transfer Coordinator for Virginia Terry Glen, former Assistant Administrator Donald Mee, psychiatrist Dr. Flora DeFilippo, Dr. Abu Ahsan, Dr. Johnny Wu, Repair Shop Supervisor Joseph Ahrens, Officer Robert Funderburk, and unnamed Jane and John Does.

Plaintiff alleges that he is housed on a "Management Control Unit" tier where he is not allowed to participate in a congregate mess and other congregate activities that are permitted to general population prisoners. Plaintiff does not allege that any of the named defendants placed him in this MCU tier.

Plaintiff alleges that he is not permitted to participate in congregate recreational activities, that the solitary recreational activity area is up a flight of stairs that he cannot climb, so that he is effectively denied all recreational activities. Plaintiff does not identify the individual who has denied him congregate recreational activities.

Plaintiff alleges that he had a broken television and that, pursuant to instructions from Defendant Repair Shop Supervisor Joseph Ahrens, he ordered repair parts for $37.00. Plaintiff alleges that, after he was advised that the television had been repaired, a non-operational television was returned to him with a note from Defendant Ahrens that Plaintiff needed to send the television outside of the prison for repair. Plaintiff's administrative remedy seeking compensation for the broken television, or use of a loaner, was denied.

Plaintiff alleges that he suffered a loss of consciousness on December 18, 2007, after being struck by Correctional Officer Merril (not named as a defendant here). Plaintiff alleges that he did not receive an appropriate examination after the incident,

3

in which his prescription eyeglasses were broken.  Subsequent examination by a doctor not named as a defendant here revealed that the event had damaged Plaintiff's right eye, leaving him with 20/40 corrected vision and rendering him legally blind. Plaintiff does not name as defendants either the person who allegedly assaulted him or any of the medical personnel who were with him after the incident.

Plaintiff alleges that, later in December, 2007, he brought the actions of Officer Merril to the notice of Defendant Administrator Michelle R. Ricci, Defendant Governor Corzine, Defendant Terry Glen, Defendant Commissioner George Hayman, and non-defendant Attorney General Anne Milgram.  Plaintiff alleges that none of these individuals took action to enforce the laws of New Jersey or to protect Plaintiff's rights.  Plaintiff does not allege any further incidents involving Officer Merril.

Plaintiff alleges that, since June 2008, Defendant Dr. Ahson has refused to treat his neurological and sleep disorder, and his respiratory condition, except with a medication that Plaintiff's medical records reflect he cannot take because of an adverse reaction.  Plaintiff alleges that beginning on October 1, 2009, Defendant Dr. Johnny Wu has refused to treat his neurological conditions and sleep disorder and has discontinued his receipt of the nutritional supplement "Ensure."  Plaintiff alleges that beginning in December 2008 Defendant Dr. Defilippo has refused to

4

treat Plaintiff's neurological disorders.  Plaintiff alleges that in January 2009 Defendant Dr. Wu prescribed Ultram/Tramadol for Plaintiff's pain, disregarding the information in Plaintiff's medical history that he suffered adverse reactions to this medication, in that it increased Plaintiff's subdural pain. Plaintiff alleges that in March 2009 Defendant Dr. Ahsan examined Plaintiff, through his cell bars, for the purposes of diagnosing and treating Plaintiff's respiratory illness.  However, the only action Dr. Ahsan took was to prescribe a medication noted in Plaintiff's medical file that Plaintiff cannot take.  Plaintiff alleges that Dr. Ahsan has refused to re-issue leg braces previously prescribed for Plaintiff's mobility problem. Plaintiff alleges that he has fallen and broken two bones in his hand because he is not receiving proper medical treatment for his multiple problems, including proper leg braces and medication. (The claims described in this paragraph are referred to herein as Plaintiff's "Eighth Amendment medical-care claims.")

Plaintiff alleges that Defendant Officer Robert Funderburk instructed the prison accountant, in June 2008, without cause, to withhold Plaintiff's $15.00 monthly state allotment.  Plaintiff alleges that he brought this incident to the attention of Defendant Administrator Michelle Ricci, but that she took no action to correct the error.  Plaintiff alleges that Defendant Funderburk confiscated Plaintiff's television in April 2009.

In August 2008, Plaintiff received a "Parole Packet" which included a Face Sheet Report noting his institutional infractions. Plaintiff alleges that the name of the employee who authored Infraction No. 340769, entered on August 12, 2006, was incorrect. Plaintiff alleges that Infraction No. 340769 was fraudulent. Plaintiff requested that Defendant Hayman investigate the error. Defendant Hayman advised Plaintiff that the matter had been referred to Defendant Michelle Ricci. No corrective action has been taken to expunge the allegedly fraudulent infraction report from Plaintiff's records, and Plaintiff alleges that the report has been used as justification to continue Plaintiff in maximum security confinement.[1]

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

---

[1] Plaintiff also alleges certain facts regarding events that occurred more than two years before July 2, 2009, the date of his Complaint. For example, he describes medical examinations that resulted in certain diagnoses. The Court construes these allegations as background facts. In another example, Plaintiff describes an incident on February 28, 2006, in which Defendant Funderburk ordered Plaintiff, on threat of punishment, to move to an upper tier cell which required him to crawl up and down 16 stairs to obtain his meals. To the extent these allegations are intended to state a claim, they are barred by the two-year limitations period applicable to claims asserted under § 1983 in New Jersey. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in</u> <u>forma</u> <u>pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in</u> <u>forma</u> <u>pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

7

the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not

merely parallel conduct that could just as well be
independent action.

      The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

      Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a

claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation." Id. at 1950. Thus,
"a court considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated. The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such
> an entitlement with its facts. See Phillips, 515 F.3d
> at 234-35. As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,

> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

11

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

    Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

12

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   <u>ANALYSIS</u>

Here, Plaintiff has alleged numerous unrelated claims against ten named defendants and unnamed John and Jane Does.[2]

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

---

[2] Plaintiff describes the Jane and John Doe defendants as "persons not now named who acted in concert with the named defendants to deprive the Plaintiff of his constitutional rights."  While fictitious defendants "'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed,'" <u>Hindes v. FDIC</u>, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted), Plaintiff's failure here to allege any identifying characteristics or any facts suggesting a basis for liability requires dismissal of all claims against unnamed fictitious defendants for failure to state a claim.

13

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  However, the policy of liberal application of Rule 20 is not a

14

license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Plaintiff's Eighth Amendment medical-care claims are sufficient to avoid dismissal at this screening stage and may proceed as against Defendants Drs. Flora DeFilippo, Abu Ahsan, and Johnny Wu.  All other allegations fail to state a claim and fail to satisfy the requirements for joinder, as detailed below.

A.    Deprivation of Property

Plaintiff alleges that he was unlawfully deprived of his television by Defendants Ahrens and Funderburk and that he was deprived of his state allotment by Defendant Funderburk.

An unauthorized deprivation of property by a government actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fifth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984) (decided under Due Process Clause of

15

Fourteenth Amendment); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981) (same), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).

New Jersey law provides for a judicial remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001).

In addition, in the context of prison confiscation of alleged contraband, a post-deprivation remedy may satisfy the requirements of due process, even if the prisoner's personal property was confiscated pursuant to an established policy. See, e.g., Barr v. Knauer, 2009 WL 962684 (3d Cir. April 10, 2009) (approving post-deprivation grievance remedy following confiscation of electric razor); Monroe v. Beard, 536 F.3d 198, 209-10 (3d Cir. 2008) (in light of prison's legitimate security needs, pre-deprivation notice is not constitutionally required), cert. denied 129 S.Ct. 1647 (2009); Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000) (prison grievance procedure satisfies procedural due process concerns where state must take quick action or where it is impractical to provide meaningful predeprivation process). The existence of a prison post-deprivation grievance remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the

16

process.  <u>Iseley v. Horn</u>, 1996 WL 510090, *6 (E.D. Pa. Sept. 3, 1996).[3]

Here, Plaintiff alleges that he initiated an administrative remedy procedure with respect to both (1) the damage to and confiscation of the television and (2) the failure to credit his state allotment.

For all the foregoing reasons, Plaintiff's claims for deprivation of property without due process must be dismissed with prejudice.

B.   <u>Statutory Discrimination Claims based upon Disability</u>

Plaintiff asserts jurisdiction under both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Plaintiff does not articulate the specific activity that he contends violate these statutes.  Consistent with its obligation to liberally construe the Complaint, the Court construes the Complaint as asserting that Plaintiff is deprived of participation in recreational activities in violation of these statutes.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be

_____

[3] The New Jersey Administrative Code sets forth regulations regarding prisoner personal property, seizure of contraband, and claims for deprivation of personal property.  <u>See</u>, <u>e.g.</u>, N.J.A.C. 10A:1-11.1 et seq. (personal property of inmates), 10A:2-6.1 (claims), and 10A:3-1.1 et seq. and 10A3-6.1 (contraband).

excluded from the participation in, be denied the benefits of, or be subjected to discrimination <u>under any program or activity receiving federal financial assistance</u>."  29 U.S.C. § 794(a) (emphasis added).

Here, Plaintiff fails to allege that he was discriminated against with respect to a program or activity that receives federal financial assistance.  Nor has he sued an entity that receives such federal financial assistance.[4]

Accordingly, Plaintiff has failed to state a claim under the Rehabilitation Act.

The purpose of the ADA is "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1). The statute prohibits discrimination against individuals with disabilities in the areas of employment (Title I); public services, programs and activities (Title II); and public accommodations (Title III).  <u>See generally</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 516 (2004).  Only Title II is arguably applicable here.

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, provides that "no qualified individual

---

[4] The United States Court of Appeals for the Third Circuit has stated in general terms that individual liability may not be imposed under the Rehabilitation Act.  <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[5] Covered public entities are defined to include state and local governments and their agencies and instrumentalities. 42 U.S.C. § 12131(1). "Public entities" encompassed by Title II of the ADA include correctional facilities. <u>Pennsylvania Dept. of Corrections v. Yeskey</u>, 524 U.S. 206 (1998). <u>See also</u> <u>Chisolm v. McManimon</u>, 275 F.3d 315 (3d Cir. 2001) (providing guidance as to the provision of services under the ADA to deaf inmates).

Private citizens are authorized to bring suit for damages against such state and local governments, their agencies and instrumentalities, and state officers in their official capacities. 42 U.S.C. § 12133.[6] In upholding Congress's

---

[5] "Qualified" disabled persons include those who "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). For purposes of this discussion, the Court will assume that Plaintiff is a qualified disabled person within the meaning of the statute.

[6] The United States Court of Appeals for the Third Circuit has stated in dicta that individual liability is not available for discrimination claims brought under Title II of the ADA. <u>Emerson v. Theil College</u>, 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals are not liable under Titles I and II of the ADA") (citing <u>Garcia v. S.U.N.Y. Health</u>

abrogation of Eleventh Amendment immunity under Title II, insofar as Title II prohibits discrimination by states regarding the fundamental right of access to courts, the Supreme Court noted Congress's reliance, <u>inter alia</u>, on evidence that states also discriminate in the administration of state penal systems.  <u>See</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 124 S.Ct. 1978, 1989 n.11 (2004).  <u>See also</u> <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206 (1998) (state prisons fall within the statutory definition of "public entity" within the ADA).

> To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  <u>See</u> 42 U.S.C. § 12132; <u>Robertson v. Las Animas County Sheriff's Dep't</u>, 500 F.3d 1185, 1193 (10th Cir.2007).

<u>Lopez v. Beard</u>, 333 Fed.Appx. 685, 687 n.1, 2009 WL 1705674, *3 (3d Cir. 2009).

Here, however, Plaintiff has failed to allege what person or entity denied him participation in recreational activities.  To the contrary, Plaintiff has alleged that Assistant Superintendent Jeffery Bell directed staff to place Plaintiff only on a recreation deck that would accommodate his handicaps, and that some unnamed person violated that instruction by putting

_____

<u>Sciences Ctr.</u>, 280 F.3d 98, 107 (2d Cir.2001) (holding Title II does not allow suits against individuals).

Plaintiff in a position where he would have to climb stairs to access a recreation deck.  As Plaintiff has failed to name as a defendant a person or entity responsible for his placement in a position that resulted in his being unable to access recreation, he has failed to state a claim.

For the foregoing reasons, the claims of discrimination based upon disability will be dismissed without prejudice.

D.    Confinement in "Management Control Unit"

Plaintiff alleges that he is confined on a "Management Control Unit" tier where he is not allowed to participate in a congregate mess and other congregate activities that are permitted to general population inmates.  He also alleges that he is confined in this unit in part because of an erroneous record of institutional infractions.  The Court construes these allegations as an attempt to assert a claim for deprivation of liberty without due process.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and

is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976), <u>quoted in</u> <u>Hewitt</u>, 459 U.S. at 468 and <u>Sandin v. Conner</u>, 515 U.S. 472, 480 (1995).  <u>Cf.</u> <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); <u>Vitek v. Jones</u>, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).  <u>See also</u> <u>Asquith</u>, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (finding that disciplinary

segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

23

Similarly, the Court of Appeals for the Third Circuit has held that New Jersey prisoners have no liberty interest, under either the United States Constitution or state law, in avoiding transfer to the Security Threat Group Management Unit, even without a hearing.  See Fraise v. Terhune, 382 F.3d 506, 522-23 (3d Cir. 2002).

Plaintiff has failed to allege facts suggesting that his confinement in the Management Control Unit exposes him to atypical and significant hardship.  Thus, Plaintiff has failed to state a claim for deprivation of liberty without due process in connection with his confinement in the Management Control Unit. This claim will be dismissed without prejudice.

E.   Failure to Investigate/Prosecute

Plaintiff alleges that he brought to the attention of various defendants the fact that Officer Merril had struck Plaintiff hard enough to render him unconscious, but that those defendants took no action to enforce the laws of New Jersey or to protect Plaintiff's rights.

"'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'"  Graw v. Fantasky, 68 Fed.Appx. 378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).  Cf. Burnside

24

v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005)
(prisoners do not have a constitutionally protected right to a
prison grievance process); Lewis v. Williams, 2006 WL 538546, *7
(D. Del. 2006) (failure to investigate a grievance does not raise
a constitutional issue) (collecting cases).  Compare Durmer v.
O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment
properly granted to prison warden and state commissioner of
corrections, the only allegation against whom was that they
failed to respond to letters from prisoner complaining of prison
doctor's treatment decisions).

    To the extent Plaintiff seeks damages for the failure to
prosecute Merril, "a citizen lacks standing to contest the
policies of the prosecuting authority when he himself is neither
prosecuted nor threatened with prosecution." Linda R.S. v.
Richard D., 410 U.S. 614, 619 (1973).  See also Leeke v.
Timmerman, 454 U.S. 83, 85-87 (1981) (in general, a private
citizen has no judicially cognizable interest in the prosecution
or non-prosecution of another).

    Accordingly, the claims against Defendants Administrator
Michelle Ricci, Governor Corzine, Terry Glen, and George Hayman
for failure to act on Plaintiff's grievances against Officer
Merril shall be dismissed with prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Eighth Amendment
medical care claims may proceed as against Defendants Dr. Wu, Dr.
Ahsan, and Dr. DeFilippo.  All other claims shall be dismissed,
pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42
U.S.C. § 1997e, for failure to state a claim.

It is conceivable that Plaintiff may be able to supplement
his pleading with facts sufficient to overcome the deficiencies
noted herein with respect to the claims dismissed without
prejudice.  However, because such claims may not properly be
joined to the claims proceeding here, if Plaintiff desires to
attempt to proceed with such claims, he must assert them in one
or more new and separate actions.  Plaintiff is cautioned that
the statute of limitations is not tolled by the assertion of such
dismissed claims in this action.

An appropriate order follows.


  /s/ JOEL A. PISANO
Joel A. Pisano
United States District Judge

Dated: 12/1/2009

26